**EISENROD et al. v. UTLEY.**
No. 13547.

United States Court of Appeals
Ninth Circuit.
March 1, 1954.

Nathan April, Los Angeles, Cal., for appellants.

Craig, Weller & Laugharn, Frank C. Weller, Hubert F. Laugharn, Thomas S. Tobin, Los Angeles, Cal., for appellees.

Before STEPHENS, ORR and POPE, Circuit Judges.

POPE, Circuit Judge.

The above named Trustee in Bankruptcy brought an action, designated one "to set aside and avoid fraudulent conveyances made by the bankrupt", against the appellants, and recovered a money judgment from which this appeal is taken. Appellants present but one contention: that this is not truly an action to set aside fraudulent transfers;

rather that it was an action to recover damages for certain tortious acts of the defendants in despoiling the bankrupt corporation. Hence it is said, the action is not one authorized by § 70, sub. e of the Bankruptcy Act to be brought in the above named court;[1] and as diversity of citizenship is lacking, the court could not entertain it. This claim of want of jurisdiction is the sole specification of error presented.

Appellants base their contention upon (1) the complaint; (2), the instructions to the jury; and (3), the verdict, which was a special one. The evidence is not here but from the sources listed appellants undertake to demonstrate that the action was not one to set aside fraudulent transfers within the meaning of § 70, sub. e. Pointing to the language of subdivision (2) of § 70, sub. e, they note that the action there referred to is one to "reclaim and recover" the transferred property, or collect its value from and avoid such transfer or obligation "against whoever may hold or have received it".[2] They say this means that the plenary jurisdiction granted by this section to a bankruptcy court is a jurisdiction "to reclaim or replevy". The action it is said must be one to recover or reclaim "transferred property", and it must be brought "against whoever may hold or have received it"; that is, it is the ancient right which a creditor had in equity to remove some obstruction fraudulently placed by the debtor in the creditors' path, but that this does not include the right to "cast the debtor or his accomplices in damages".[3]

The complaint states that in March, 1945, when the alleged fraudulent transfers took place, the Eisenrods owned all of the stock in Lincoln Machine Co., here called Lincoln, a Rhode Island corporation. Lincoln, it is alleged, was "owned, controlled, dominated and operated" by the Eisenrods. At that time the Eisenrods contrived to procure their own election as directors of Poulsen & Nardon, Inc., hereafter called Poulsen, the California corporation which subsequently was adjudicated bankrupt. The Eisenrods then arranged for Lincoln to acquire all of the stock of Poulsen. To furnish the funds for this acquisition the Eisenrods caused Poulsen, contrary to its by-laws, to transfer to Lincoln large sums of money aggregating amounts in excess of $615,000, under the guise of loans to Lincoln, although Lincoln was insolvent and its only purported asset was the stock of Poulsen thus acquired. Additional sums, it is alleged, were

1. § 110, sub. e (1), 11 U.S.C.A.: "A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor.

"(2) All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and released from such transfer and shall pass to, and every such transfer or obligation shall be avoided by, the trustee for the benefit of the estate: Provided, however, That the court may on due notice order such transfer or obligation to be preserved for the benefit of the estate and in such event the trustee shall succeed to and may enforce the rights of such transferee or obligee. The trustee shall reclaim and recover such property or collect its value from

and avoid such transfer or obligation against whoever may hold or have received it, except a person as to whom the transfer or obligation specified in paragraph (1) of this subdivision is valid under applicable Federal or State laws.

"(3) For the purpose of such recovery or of the avoidance of such transfer or obligation, where plenary proceedings are necessary, any State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction."

2. See note 1, supra.

3. Appellants summarize their analysis of the sections by saying that three elements are necessary: "1. The *bankrupt* must have made a transfer. 2. The transfer must be one that is voidable by his creditors. 3. The transfer must have been made directly or ultimately to the *defendant,* who must have *'received'* it."

transferred to the Eisenrods as purported commissions to them and for use by them in purchasing stock of Poulsen. These transactions were pursuant to a fraudulent conspiracy, scheme and plot concocted by Poulsen, acting through the Eisenrods, who became the officers of that corporation and who contrived to elect one Jack D. Eisenrod in the place of the third director who resigned. The scheme and plot was one designed to transfer from Poulsen assets belonging to it, and available for payment to its creditors, to the defendants and to their owned, controlled and dominated Lincoln Machine Co., with intent and purpose to hinder, delay or defraud Poulsen's creditors, and with the design and contemplation that funds so transferred to Lincoln should come to the defendants in the form of salaries.

The complaint also states that part of the scheme was to pay the Eisenrods exorbitant, unreasonable and inflated salaries as officers of Poulsen. That as a result of the acts thus performed there was transferred to the defendants or to their wholly owned, dominated and controlled corporation, a sum in excess of $722,000. It also alleged the existence of an extensive indebtedness on the part of Poulsen to various creditors; that corporation's inability to meet those debts largely on account of the fraudulent transfers here mentioned; and the bankruptcy adjudication in May, 1948. The prayer was for judgment that these transfers be set aside and be decreed to be fraudulent and void as to the creditors of Poulsen; that the defendants be required to account for funds found to have been diverted by the bankrupt corporation to them, and that plaintiff have a money judgment against the defendants.

■ Appellants say that at most this complaint alleges acts on the part of defendants which despoiled or damaged the bankrupt corporation but that it does not state a cause of action within the meaning of § 70, sub. e or within the jurisdiction of the court below because it shows first, that the bankrupt itself did not make any transfer, and second, the defendants are not alleged to have received any such transfer.

Attention is called to the allegation that the by-laws of the bankrupt corporation did not permit its officers or directors to make loans or transfers of its funds under the circumstances here set out and hence that the corporation cannot be said to have acted in making the transfers. Appellants rely principally upon Park v. Cameron, 237 U.S. 616, 35 S.Ct. 719, 720, 59 L.Ed. 1147, in which the court had occasion to examine the allegations of a bill in equity which the court below had dismissed for want of jurisdiction. In that case the court said: "The other allegations are not material to the question before us. Those that we have recited seem to us in their conclusion to import not that the corporation has done anything, but that certain of its officers, by false pretenses, have withdrawn its funds. If so, the suit is not to avoid a transfer by the bankrupt of its property, but a suit against wrongdoers, who have appropriated it without the bankrupt's assent, and therefore not within §§ 23b and 70e of the act [11 U.S.C.A. §§ 46, sub. b, 110, sub. e]." It is said that the complaint here amounts to no more and that we must therefore hold that it disclosed want of jurisdiction in the trial court.

When Park v. Cameron was decided the language of § 70, sub. e was: "The trustee may avoid any *transfer by the bankrupt* of his property which any creditor of such bankrupt might have avoided * * *." (Italics supplied.) After the amendment made by the Chandler Act the section read: "A transfer *made or suffered* or obligation incurred by a debtor adjudged a bankrupt under this title which * * * is fraudulent as against or voidable for any other reason by any creditor of the debtor * * * shall be null and void as against the trustee of such debtor. * * *" (Italics supplied.) Title 11 U.S.C.A. § 110, sub. e(1). Also in the 1938 Act the definition of "transfer" in § 1(30) was amended to make it clear

that "transfer" included every "parting with property" or with an interest therein or possession thereof, "voluntarily or involuntarily".[4] It appears to us that these 1938 amendments operated to bring within the orbit of § 70, sub. e the very thing which transpired here. Whether under the doctrine of Park v. Cameron it could be said that the transfer here was one "by" the bankrupt is of no consequence for the transfer in question was in any event one "made or suffered". It was a "transfer" whether the property was parted with "voluntarily or involuntarily," for such is now the definition of that term.

In an effort to support their contrary position appellants rely upon the case of Warner v. Dworsky, D.C.Minn., 98 F.Supp. 466. Unfortunately for appellants' case, that decision was reversed in Warner v. Dworsky, 8 Cir., 194 F.2d 277. In an earlier decision in the same case, Warner v. Dworsky, D.C., 91 F. Supp. 884, the court held correctly that the rule of Park v. Cameron, supra, had been superseded by the amendments which we have mentioned above. Later, in the decision which appellants have cited to us, the judge, evidently misled by some statements made in the legislative history of the Chandler Act, recalled his former decision and dismissed the action. In this, as we have noted, he was held by the Court of Appeals to have been in error for he had been right the first time. That court's opinion deals at length with the amendments of the Act discussed here. Similarly taking note of those amendments, we hold that the transfers described in the complaint were transfers "made or suffered" within the meaning of the Act.

Nor do we find any merit in the next contention of appellants to the effect that the transfers were not made to the defendants and that the defendants had not received them. The complaint is replete with allegations of the fraudulent purpose and intent on the part of the Eisenrods. It asserts that in order to accomplish their fraud they made use of Lincoln, an allegedly "dormant" corporation, which was owned, controlled, dominated and operated by the defendants. Under such circumstances the corporate fiction may be disregarded. Shea v. Leonis, 14 Cal.2d 666, 96 P.2d 332.[5] Under the circumstances here the complaint sufficiently charges the Eisenrods with being the persons to whom the transfers were made and who received the funds thus transferred.

We hold therefore that the complaint sufficiently discloses a case within the jurisdiction of the court below. In the condition of the present record, the appellants are not in an advantageous position to make the argument which they have sought to evolve from the allegations of the complaint itself. The appellants purport to find much contradiction and ambiguity in the complaint, saying that it "abounds in equivocations" and lacks consistency. Appellants say that they have been obliged to arrive at certain conclusions as to the complaint's dominant allegations "despite its tergiversations".

If, as appellants' brief suggests, the complaint is open to varying constructions, or if in some respect it lacks clarifying amendments, it is plain that upon the trial evidence upon such points may have been received without objection,—evidence which would fur-

4. Title 11 U.S.C.A. § 1(30): "'Transfer' shall include the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security, or otherwise; the retention of a security title to property delivered to a debtor shall be deemed a transfer suffered by such debtor".

5. See also Minifie v. Rowley, 187 Cal. 481, 202 P. 673; Sunset Farms v. Superior Court, 9 Cal.App.2d 389, 50 P.2d 106.

nish that clarification and demonstrate beyond doubt a case within § 70, sub. e. In that event, under Rule 15(b), Rules of Civil Procedure, 28 U.S.C.A., the complaint would be deemed amended accordingly. In the absence of the record of the testimony we think that appellants are not in a position to argue that lack of jurisdiction can be demonstrated solely on the basis of their analysis of this complaint. However, as we have previously indicated, we have found no such ambiguity as would create any doubt in our minds as to the complaint's sufficiency to disclose a case within the court's jurisdiction.

Appellants undertook to bolster their construction of the complaint by reference to the instructions to the jury and the verdict of the jury itself. Thus reference is made to the court's charge to the jury that the purpose of the suit was to recover from the defendants sums of money which had been transferred to *others* by the wilful acts of the defendants and *to corporations* in which the defendants were interested. In referring to the jury's special verdict, appellants called attention to the findings that the transferee of the fraudulent transfers is identified as Lincoln. It appears that the only questions submitted to the jury were as to whether certain transfers were fraudulent within the meaning of the court's instructions, and whether the defendants participated in the alleged conspiracy. The judge may well have decided that on the record he was compelled to rule that the corporate fiction must be disregarded. If that was so, there was no occasion for the court to go into such matter either in its instructions to the jury or in the interrogatories submitted to them. We find nothing in either of these matters to require a conclusion different from that indicated by the allegations of the complaint.

What we have thus decided makes it unnecessary for us to consider appellee's argument that the appellants by raising no question of the court's jurisdiction before or in their answer, and by answering the complaint upon the merits and praying "that a hearing be had on the said complaint and answer", consented to the trial in the court below, within the meaning of § 23, sub. b of the Act.[6]

The judgment is affirmed.

6. "Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this Act had not been in- stituted, unless by consent of the defendant, except as provided in sections 60, 67 and 70 of this Act." 11 U.S.C.A. § 46, sub. b. See Schumacher v. Beeler, 293 U.S. 367, 55 S.Ct. 230, 79 L.Ed. 433.