Glenn D. BARTLE, Receiver of Markson Bros., Inc., now known as M B H, Inc., Plaintiff-Appellant,

v.

Asher S. MARKSON, Defendant-Appellee.

No. 219, Docket 29235.

United States Court of Appeals Second Circuit.

Argued Nov. 16, 1964.

Decided Jan. 14, 1965.

Rehearing Denied Feb. 3, 1965.

Bros., a New York corporation, was a large retailer of furniture and house furnishings, operating throughout northern and central New York with Syracuse the center of its operations. On October 22, 1959, defendant, Asher S. Markson, the president and a principal stockholder of Markson Bros., and certain of his relatives, constituting the remaining shareholders of Markson Bros., executed an agreement to transfer all the outstanding shares of Markson Bros. to Son-Mark Industries, Inc. At that time, Dun & Bradstreet rated Markson Bros. an AAA-1 company, but almost immediately after the stock transfer Markson Bros. began what Judge Clark described as a "sudden and unexplained riches-to-rags descent from its position as one of the financially strongest concerns in the central New York area to that of a bankrupt company." 314 F.2d at 306.

On March 31, 1961, Markson Bros. filed a petition for arrangement under Chapter XI. According to the plan, general unsecured creditors were to receive 47½ percent of their claims in cash. Though some creditors objected to the plan on the ground that a loan of almost $2,000,000 by Markson Bros. to Son-Mark Industries had not been explained, the Referee confirmed the plan on September 7, 1961. The Referee's order was affirmed by Judge Brennan on July 20, 1962. On appeal, this court remanded the case for an explanation by Markson Bros. of "the loss of nearly $2,000,000 in a loan to its corporate parent."

Subsequent to the decision of this court on March 5, 1963, the objecting creditors discovered that during the pendency of the proceedings just described, transfers of all the stock and assets of Markson Bros. had been consummated. Chester Tricot Mills, Inc., acquired all the stock on or about August 11, 1961, and Chester transferred the assets to its wholly-owned subsidiary, Solway's Furniture, Inc., on or about December 28, 1961. The objecting creditors promptly obtained an order requiring Chester to show cause why it should not turn over to Markson

Laurence Sovik, Syracuse, N. Y. (Smith, Sovik, Terry, Kendrick, McAuliffe & Schwarzer, Syracuse, N. Y., on the brief), for plaintiff-appellant.

William J. Mackay, Syracuse, N. Y. (Mackay & Caswell, Syracuse, N. Y., on the brief), for defendant-appellee.

Before MEDINA, MOORE and MARSHALL, Circuit Judges.

MEDINA, Circuit Judge:

The background of this case seems complicated, due in large measure to various procedural maneuvers in the bankruptcy court for the Northern District of New York and to the pendency of certain actions in the New York Supreme Court, Onondaga County. A brief review of the facts, however, and the application of simple legal principles, will, we think, make it clear that the judgment entered by Judge Brennan dismissing the complaint because of plaintiff's lack of capacity to sue must be affirmed.

As we noted in an earlier appeal to this court, Bartle v. Markson Bros., Inc., 2 Cir., 1963, 314 F.2d 303, Markson

**32**

Bros. the value of the assets transferred to Solway's.

Extensive negotiations between the attorneys for the objecting creditors and those representing Chester ensued. It was agreed that settlement of the claim against Chester would be mutually advantageous. Chester offered to pay all the creditors 25 percent of their claims against Markson Bros., in addition to the 47½ percent they had previously received, and the creditors specifically reserved their rights under Section 4, sub. b of the Bankruptcy Act, 11 U.S.C. § 22, sub. b,[1] against the officers, directors and shareholders of Markson Bros. After providing notice to all creditors and a hearing, at which counsel for the objecting creditors, Chester and Markson Bros. appeared in favor of the settlement, the Referee approved the compromise on October 28, 1963.

Vindication of the creditors' rights against officers and directors of Markson Bros. had begun about one month prior to the Referee's order reserving these rights. What purported to be a class action on behalf of all creditors was instituted in the New York State Supreme Court, in and for the County of Onondaga, on September 30, 1963. Plaintiffs in the action were a large group of creditors allegedly representing themselves and the remaining creditors; the defendant was the same Asher S. Markson who is the defendant-appellee on this appeal. Subsequently, another creditor commenced a second class action in the Onondaga County Supreme Court; the defendants were Markson Bros., Son-Mark and several officers and directors of Markson Bros. other than Asher S. Markson. All of the plaintiffs in the two state actions and in this case are represented by the same counsel.

Various motions were made in the two state actions by both sides. One

sought to prevent the use of the class action device, and to require each creditor to appear individually and demonstrate the validity and amount of his claim. To circumvent these potential procedural burdens, plaintiffs' attorney petitioned the District Court on March 3, 1964, while the motions were still pending, to reopen the bankruptcy hearing for the purpose of appointing a receiver or trustee to appear in the state proceedings on behalf of all the creditors. Judge Brennan granted the petition and on the same day, March 3, 1964, plaintiff-appellant herein was appointed receiver by the Referee pursuant to Section 332 of the Bankruptcy Act, 11 U.S.C. § 732.[2] The receiver was directed to "take charge of the property of Debtor [Markson Bros.] and protect the interests of creditors and * * * commence and prosecute any suit or proceeding on behalf of the Estate or its creditors * * *." The receiver immediately filed a motion to intervene in the state court proceedings.

On March 31, 1964, the state Supreme Court decided the motions. The class action was disallowed. The court also held that as the individual defendants before it were not parties to the Markson Bros. bankruptcy proceedings, the validity and amount of each creditor's claim could still be questioned. As the receiver's motion to intervene was unsupported by the pleadings required by Section 1014 of the Civil Practice Law and Rules, the motion was denied without prejudice to its renewal on proper papers. The Supreme Court noted, however, by way of dictum, that the receiver otherwise appeared to be a proper party to the proceedings. There were numerous other rulings on motions for summary judgment, to strike defenses as insufficient in law, and for other relief. The two cases were consolidated for trial.

1. Which provides in pertinent part:
"The bankruptcy of a corporation shall not release its officers, the members of its board of directors or trustees or of other similar controlling bodies, or its stockholders or members, as such, from

any liability under the laws of a State or of the United States."

2. "The court may, upon the application of any party in interest, appoint, if necessary, a receiver of the property of the debtor * * *."

We were informed on oral argument that an appeal or appeals from a number of these rulings were taken to the Appellate Division, Fourth Department, and they appear to be still pending and undetermined.

On April 10, 1964, the receiver started the case now before us in the District Court for the Northern District of New York. The court below dismissed the complaint on the ground that the receiver lacked capacity to sue in behalf of the creditors following the transfer of all the assets of Markson Bros. Judge Brennan stated:

"the plaintiff, in the order appointing the receiver, was directed to take charge of the property of the debtor and the allegation of the complaint shows that there is no such property in existence. Under the circumstances, for practical purposes, the appointment is a nullity. Additionally, the authority in the above order of appointment to prosecute any action on behalf of creditors of the debtor must necessarily mean a cause of action which is owned by the debtor."

 Despite the fact that nearly two years after our earlier decision no explanation of the $2,000,000 loan has been given, we conclude that Judge Brennan had no alternative other than to dismiss the complaint. Virtually as a matter of definition, the primary function of a receiver in bankruptcy is to preserve the debtor's property rather than act as the representative of his creditors. See Quincy, M. & P. R. R. Co. v. Humphreys, 1892, 145 U.S. 82, 97, 12 S.Ct. 787, 36 L.Ed. 632; Powell v. Maryland Trust Co., 4 Cir., 1942, 125 F.2d 260, 271. See generally 1 Collier, Bankruptcy 206–227 (14th ed.). As the Referee's order of October 28, 1963 approving the compromise with Chester explicitly recognized and confirmed the earlier transfer by the debtor of all its assets, and the reservation to the unsecured creditors was of "all causes of action against officers, directors and stockholders of Debtor as provided in Section IV(b) of the Bankruptcy Act," there was nothing left to provide a basis for prosecution against these same persons by the receiver.

Nor does affirmance here render nugatory our prior decision that the debtor explain the loan. First, as a result of that decision, the creditors have already realized an additional 25 percent of their claims against Markson Bros. Moreover, the settlement reserved the creditors' rights against the officers and directors of Markson Bros. and these rights are being pursued in the state courts, though with procedural handicaps that might be obviated were the bankruptcy proceedings properly reopened. Thus, we have here no question whether it is contrary to the public policy of New York or of the United States to permit a looting officer or director to shift his liability to a bankrupt corporation, cf. 11 U.S.C. § 22, sub. b, or to permit a corporation which he controls to determine whether or not he shall be sued. Cf. N. Y. Business Corporation Law, McKinney's Consol. Laws, c. 4, Sections 722, 723; Schwarz v. General Aniline & Film Corp., 1953, 305 N.Y. 395, 113 N.E.2d 533.

We hold simply that suit by a receiver is an improper method of gaining admission to the federal courts under the circumstances of this case. We do not, of course, pass upon the question whether it was correct, under New York law, for the state Supreme Court to indicate that the receiver would be permitted to intervene there upon the filing of proper papers. And as the question has not been presented either to the Referee, to the District Court or to us, we do not think this an appropriate occasion to consider whether some alternative procedure might render a federal forum available for the prosecution of these claims.

Affirmed.