Glenn D. BARTLE, Trustee of Markson Bros., Inc. now known as M B H, Inc., Plaintiff-Appellant,

v.

Asher S. MARKSON, Defendant-Appellee.

No. 68, Docket 29803.

United States Court of Appeals Second Circuit.

Argued Oct. 20, 1965.

Decided Feb. 14, 1966.

Laurence Sovik, Syracuse, N. Y. (Smith, Sovik, Terry, Kendrick, McAuliffe & Schwarzer, Syracuse, N. Y.), for appellant.

William J. Mackay, Syracuse, N. Y. (Mackay & Caswell, Syracuse, N. Y.), for appellee.

Before WATERMAN, MOORE and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge:

Judge Medina's opinion in Bartle, Receiver v. Markson, 340 F.2d 30, 31–33 (2 Cir. 1965), so well describes the tangled background of the proceeding now before us that a summary statement will suffice at this point. On March 31, 1961, Markson Bros., Inc., a large retailer of furniture and house furnishings in New York, filed a petition for arrangement under Chapter XI of the Bankruptcy Act in the District Court for the Northern District of New York. Following a complicated series of challenges by creditors, the bankruptcy hearings were terminated on October 28, 1963, by a Referee's order confirming the transfer of all the debtor's assets and reserving to the unsecured creditors all causes of action against its officers, directors and stockholders. Banruptcy Act § 4(b). At that time a suit against Asher S. Markson, one of the officers and directors, had been instituted in the New York courts on behalf of all creditors; another class action was commenced shortly thereafter. When Markson subsequently challenged the use of the class action device and contended that each creditor must establish his individual claim, creditors petitioned the district court to reopen the bankruptcy hearing for the purpose of appointing a receiver or trustee to appear in the New York proceedings. On March 3, 1964, Judge Brennan reopened the estate and appointed a receiver. After the receiver's motion to intervene in the state court was denied without prejudice, he commenced a suit against Markson in the District Court for the Northern District of New York. Judge Brennan dismissed the complaint and on appeal this court concluded that when all the debtor's assets had been transferred and all causes of action against its officers and directors had been reserved to the creditors, no basis remained to support prosecution of creditors' claims by a receiver appointed under Chapter XI of the Bankruptcy Act, and that such a suit was "an improper method of gaining admission to the federal courts." 340 F.2d at 33. Observing that the question had not been presented, the court did not deem the occasion appropriate to consider "whether some alternative procedure might render a federal forum available for the prosecution of these claims." 340 F.2d at 33. That issue now comes before us.

Shortly after our decision, a special meeting of creditors of Markson Bros. was held on due notice, and Bartle was elected trustee. He immediately renewed the attack by bringing this action against Markson in the District Court. Markson moved for summary judgment dismissing the complaint both for failure to state a claim upon which relief could be granted and for lack of capacity to sue; the contention was that all claims against him had been reserved to the individual creditors, who were pursuing their remedies in an action in the New York courts, and that the re-opening of the estate and the appointment of a trustee did not vest the latter with the claims thus transferred. Judge Brennan expressed doubts as to federal jurisdiction, but since the

point had not been briefed or argued,[1] thought it more practical to act upon the contentions urged in the moving papers. So doing, he dismissed the complaint on the ground that "plaintiff has no capacity to sue since he has no ownership or control of the asserted claim for relief and is therefore not the real party in interest." From this judgment the trustee appeals.

## I.

■■■ Despite the attractiveness of the course followed by the district judge, we think the question of federal jurisdiction should be faced *in limine* before reaching the issue of the trustee's capacity to sue, see Arrowsmith v. United Press International, 320 F.2d 219, 221 (2 Cir. 1963). It is true that *Arrowsmith* was concerned with jurisdiction over the person, in the absence of which any judgment would be void, whereas lack of federal jurisdiction would not usually afford ground for collateral attack. Restatement, Judgments § 7, comment c (1942). However, a federal court which has noted a possible lack of federal jurisdiction must generally decline to proceed further until it has favorably resolved the doubt, Mitchell v. Maurer, 293 U.S. 237, 55 S. Ct. 162, 79 L.Ed. 338 (1934), and, despite the special considerations outlined in the margin that might justify departure from that practice in this case,[2] we shall first examine the jurisdictional issue.

The complaint, as Judge Brennan noted, failed to comply with the command of F.R.Civ.P. 8(a) (1) that it contain "a short and plain statement of the grounds upon which the court's jurisdiction depends." This must be spelled out from the rather obscure factual allegations. Defendant Markson and his relatives owned all the stock of Markson Bros., the bankrupt. For many years preceding the filing of its Chapter XI petition on March 31, 1961, he was in active charge of its affairs, and, except for an interval from November 6 to December 30, 1959, was its president and a director. In August 1959, he negotiated the sale of the Markson Bros. stock for $1,350,000 to Son-Mark Industries, Inc., a corporation organized by the purchasers. Son-Mark borrowed $1,350,000 from Markson Bros. The latter, with the knowledge and consent of Markson, parted with various sound assets in order to make the loan, for which it received subordinated debentures of Son-Mark having "no market value and no readily saleable value."[3] Although the public was informed of the purchase of the stock by Son-Mark, there was no disclosure that $1,350,000 of Markson Bros. assets had been liquidated and used to facilitate the purchase. The depletion of these assets on November 6, 1959, rendered Markson Bros. insolvent, and it remained so. In addition, with Markson's knowledge and consent, between January 1960 and February 1961, $1,329,039.42 was withdrawn from Markson Bros. bank accounts and paid over to Son-Mark, nearly half being appropriated to the latter's use; other sums were paid by Markson Bros. to Son-

1. The point had not been urged in the proceedings relating to the receiver's suit.

2. What might set the instant case apart is that, as will appear below, the governing statute presents the rare situation where federal jurisdiction can be conferred by the defendant's consent. Although it would be unrealistic to find a "consent" by Markson simply because he failed to challenge federal jurisdiction in his motion to dismiss, we would take a different view if he should go to trial without raising the issue, see Wymard v. McCloskey & Co., 342 F.2d 495, 498 (3 Cir. 1965), and cases cited therein. Although that is conceivable, it is hard to suppose that

Markson, who has not exactly welcomed this action, would not press the point on a remand now that it has been sharply brought to his attention, and, if a motion to dismiss were to be granted, we would have still another appeal. Under these circumstances we deem it best to determine at the outset whether there is a basis for federal jurisdiction independent of any consent.

3. Son-Mark became the subject of a bankruptcy proceeding in the Eastern District of Pennsylvania, see Bartle v. Markson Bros., Inc., 314 F.2d 303, 306 (2 Cir. 1963).

Mark without consideration; in February 1961 Markson Bros. acquired the assets of a company from Son-Mark for cash, but thereafter paid over to Son-Mark the receipts from its operation; on March 28, 1960, Markson Bros. assigned accounts receivable to Redisco, Inc., for a loan of $985,464, of which $639,000 was used to pay the balance of the Walter E. Heller & Co. loan to Son-Mark for the purchase of Markson Bros. stock; and advances under this agreement with Redisco increased to $1,970,320 by February 7, 1961. The various transactions were alleged to violate Article 10 of the New York Debtor and Creditor Law, McKinney's Consol.Laws, c. 12, § 60 of the General Corporation Law, McKinney's Consol.Laws, c. 23, §§ 15 and 58 of the Stock Corporation Law, McKinney's Consol.Laws, c. 59, and § 67 of the Bankruptcy Act.

Federal jurisdiction over such a suit by a trustee is controlled by § 23 of the Bankruptcy Act: [4]

> § 23. *Jurisdiction of United States and State Courts.* a. The United States district courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings under this Act, between receivers and trustees as such and adverse claimants, concerning the property acquired or claimed by the receivers or trustees, in the same manner and to the same extent as though such proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.
>
> b. Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this Act had not been instituted, unless by consent of the defendant, except as provided in sections 60, 67, and 70 of this Act.

The District Court was justified in assuming that Markson is a resident of New York and thus in concluding that the debtor, a New York corporation, could not have sued him in federal court. Markson has not yet consented to such a suit, and it seems unlikely that he will, see fn. 2. Absent such a consent, federal jurisdiction does not exist unless the suit falls within the provisions of §§ 60, 67 or 70 of the Bankruptcy Act—applicable in Chapter XI proceedings by virtue of §§ 302, 342 and 352—which confer federal jurisdiction over certain plenary actions to recover property. On the other hand a fair reading of § 23 sustains federal jurisdiction in any such case even though this may not precisely square with every letter; despite the disturbing redundancy and contradictions in the statute, which badly needs overhaul,[5] it seems fairly plain that Congress intended a trustee to be able to prosecute a plenary suit in federal court if, although only if, one of the enumerated conditions was satisfied. See MacLach-

4. 28 U.S.C. § 1334, giving the district courts exclusive jurisdiction "of all matters and proceedings in bankruptcy," is inapplicable to what was necessarily a plenary suit. See 2 Collier, Bankruptcy ¶23.02 (14th ed. 1964).

5. For example, subdivision (a) uses the phrase "adverse claimants" which subdivision (b) does not, and does not contain the two exceptions which subdivision (b) does. This contrariety is doubtless due to the fact that the two subdivisions originally served different purposes. See Schumacher v. Beeler, 293 U.S. 367, 55 S.Ct. 230, 79 L.Ed. 433 (1934) and 2 Collier, Bankruptcy ¶23.13,

at 593 n. 9 (14th ed. 1964). There is the still more basic question whether the grant of federal jurisdiction comes from § 23, see MacLachlan, Bankruptcy § 219, or from § 2a(7) with § 23 as a limitation, see 2 Collier, Bankruptcy ¶23.12, at 590–91—an issue put in doubt by Williams v. Austrian, 331 U.S. 642, 67 S.Ct. 1443, 91 L.Ed. 1718 (1947). And there is the further anomaly, which gave rise to that decision, that, because of § 102, § 23 does not apply in proceedings for corporate reorganization under Ch. X, although it does in proceedings for railroad reorganization under § 77 and for arrangements under Ch. XI.

lan, Bankruptcy § 219 (1956); 1 Moore, Federal Practice ¶ 0.60 [8. –6], at 654–656 (2d ed. 1964).

■ The complaint, lacking any allegation of a debtor-creditor relationship between Markson Bros. and Son-Mark, does not sufficiently charge a preference avoidable under § 60. Section 67, to which the complaint refers, is a rather slender reed since most of the transactions alleged, even if within the definition of fraudulent conveyances, did not occur within a year prior to the filing of the petition, as § 67 requires. A much stronger and, in our view, sufficient basis for jurisdiction can be found in § 70e, which declares that the trustee can avoid any transfer of property that is fraudulent or voidable "under any Federal or State law applicable thereto."

■■ The complaint, when read with appropriate charity, does allege conveyances condemned as fraudulent by §§ 273–276 of the New York Debtor and Creditor Law, and transfers of corporate property violating § 15 of the Stock Corporation Law. If the action were against Son-Mark to set aside the transfer of November 1959, the applicability of § 70e (1) and consequent federal jurisdiction would be too clear for discussion. We see no reason for taking a different view because the action is solely against Markson, who, along with the other stockholders of Markson Bros., was alleged to be the ultimate recipient of the proceeds of the company's assets that were transferred to Son-Mark to pay the purchase price of the stock; as to the initial transfer of $1,350,000 from Markson Bros., Son-Mark is claimed to have been simply a vessel wherein these sums, exchanged for unmarketable subordinated debentures, were mingled with the loan from Heller before the payment to the stockholders. To the extent that Markson has received the benefit of a conveyance allegedly fraudulent against creditors, he is the proper defendant in a suit to avoid the transfer and § 70e is applicable even on the most literal reading. Cf. Lytle v. Andrews, 34 F.2d 252 (8 Cir. 1929);

Eisenrod v. Utley, 211 F.2d 678 (9 Cir. 1954).

■ The other transactions challenged in the complaint, where Markson's liability is for having caused or consented to a fraudulent transfer, cf. New York General Corporation Law § 60, subd. 2, rather than for having received its fruits, may not fit so neatly under § 70e. Compare Glenn, Fraudulent Conveyances and Preferences §§ 56, 605 (1940). But, assuming *arguendo* that the claims are not within that section, we see no reason why federal jurisdiction to hear them should not attach under the principle of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), since the alleged fraudulent conveyance of Markson Bros. assets to Son-Mark and thence to Markson and other stockholders was the source from which all else flowed. To be sure, these other transactions may not constitute "different grounds asserted in support of the same cause of action," 289 U.S. at 247, 53 S.Ct. at 590; Strachman v. Palmer, 177 F.2d 427, 12 A.L.R.2d 687 (1 Cir. 1949), and recovery for them may not rest upon facts that are substantially identical, see Musher Foundation, Inc. v. Alba Trading Co., 127 F.2d 9, 10 (2 Cir.), cert. denied, 317 U.S. 641, 63 S.Ct. 33, 87 L.Ed. 517 (1942); Zalkind v. Scheinman, 139 F.2d 895, 900 (2 Cir. 1943), cert. denied, 322 U.S. 738, 64 S.Ct. 1055, 88 L.Ed. 1572 (1944). But the formulation of the standard for recognizing pendent jurisdiction in the *Hurn* case, prior to Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), was made at a time when federal adjudication of state-created rights offered greater danger of a result incongruent with state law, cf. Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538, 540 n. 1 (2 Cir. 1956); and the narrow view that would limit pendent jurisdiction to situations within that formulation has not been universally adopted. Compare United Lens Corp. v. Doray Lamp Co., 93 F.2d 969 (7 Cir. 1937); Musher Foundation, Inc. v. Alba Trading Co., supra, 127 F.2d at 11 (Clark, J., dissenting); Man-

osky v. Bethlehem-Hingham Shipyard, Inc., 177 F.2d 529, 534 (1 Cir. 1949); Errion v. Connell, 236 F.2d 447, 454 (9 Cir. 1956); Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law & Contemp.Prob. 216, 232–233 (1943); ALI, Study of the Division of Jurisdiction between State and Federal Courts, Tent. Draft No. 3, pp. 9, 54–58 (1965); cf. Maternally Yours, Inc. v. Your Maternity Shop, Inc., supra, 234 F.2d at 544. The proper balance between the evils of piecemeal litigation in different courts and undesirable federal handling of state law claims depends upon the nature of the state claim to be adjudicated and its relationship to the cause of action on which federal jurisdiction is based. See Wechsler, supra, at 232. Here the claims which we are assuming not to come within the grant of federal jurisdiction, advanced by a trustee in bankruptcy to gather assets of the estate, are simply the second act of a play in which the claim within federal jurisdiction (state-created but federally adopted) is the first; in a state court action on this second group of claims, the trustee would have to reconstruct proof already presented in the federal suit. The argument in favor of recognizing pendent jurisdiction, thereby avoiding fragmentation of the trustee's case, seems particularly strong since Congress could "throw into the bankruptcy courts all litigation to which receivers or trustees in bankruptcy properly become parties," MacLachlan, Bankruptcy § 219, at 245 (1956); Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 430–431, 44 S.Ct. 396, 68 L.Ed. 770 (1924), and determination of the state claims thus represents no extension of federal judicial power into areas constitutionally prohibited in the absence of diversity.[6]

## II.

Having established the existence of federal jurisdiction independent of any consent by Markson, we turn to the question of the trustee's capacity to sue in this case. When the Referee terminated the Chapter XI proceeding, while expressly reserving to the creditors all claims against officers, directors and stockholders, everyone expected these claims to be vindicated in suits on behalf of all creditors in the state courts. So they doubtless would have been had Markson not "sought to prevent the use of the class action device, and to require each creditor to appear individually and demonstrate the validity and amount of his claim." 340 F.2d at 32. The potential frustration of creditors' rights, threatened by the procedural obstacles thrown up by Markson,[7] afforded ample justification for reopening the estate. Section 2a(8), which had previously authorized a bankruptcy court to reopen estates "whenever it appears they were closed before being fully administered," was broadened by the Chandler Act to permit reopening "for cause shown." See 1 Collier, Bankruptcy ¶¶ 2.47, 2.49 (14th ed. 1964). "What constitutes 'cause' is not defined and lies primarily within the discretion of the district judge; only for plain abuse of discretion should his decision be reversed." In re Perlman, 116 F.2d 49, 50 (2 Cir. 1940). Discovery that the claims of creditors might not be susceptible of effective prosecution in the manner initially contemplated is a wholly appropriate basis for affirmative exercise of the court's discretion. We perceive scant equity in an attack on this from the defendant whose challenge to the attempted class

---

**6.** This court's decision in Lowenstein v. Reikes, 60 F.2d 933 (2 Cir. 1932), cert. denied, 287 U.S. 669, 53 S.Ct. 315, 77 L.Ed. 577 (1933), need not be read as taking a contrary view since the two transactions joined in the complaint were not so closely related as here. Moreover, that decision was rendered while this court was taking a position as to pendent jurisdiction which the Supreme Court later held too narrow, see Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), reversing 61 F.2d 1031 (2 Cir. 1932).

**7.** The petition for reopening alleged that there were 432 creditors, scattered throughout the country, with total claims of $655,297.

action created the occasion for the reopening.

The district judge, having thus soundly exercised his discretion to reopen and appoint a trustee, was mistaken in later concluding that the trustee lacked capacity because the claims had passed to the creditors beyond recall. The order of October 28, 1963, cannot reasonably be read as an instrument of conveyance to the several hundred creditors. The claims against Markson had been assertable by the creditors before the filing of the Chapter XI petition, but thereupon became subject to prosecution by the debtor in possession by virtue of §§ 70a, 302, 342, and 352. See 8 Collier, Bankruptcy ¶ 6.32[1]and [2]. Although the termination of the Chapter XI proceeding returned to the creditors the initiative they had held before its beginning, the reopening renewed the status that had existed during its pendency, save only that a trustee was substituted for the debtor in possession. And a trustee, unlike a receiver in bankruptcy whose primary function "is to preserve the debtor's property," see 340 F.2d at 33, is normally empowered to act as the representative of the creditors.

The final argument against maintenance of the suit is that, however the matter might stand in other types of reopening, a trustee cannot be appointed in a proceeding begun by an original petition for arrangement under Chapter XI, § 322. While § 44a provides that the creditors of a bankrupt "shall, at the first meeting of creditors after the adjudication, or after a vacancy has occurred in the office of trustee, or after an estate has been reopened, appoint a trustee or three trustees of such estate," Markson says that § 44a cannot apply in an arrangement proceeding under § 322 because it is inconsistent and in conflict with the provisions of Chapter XI, see § 302; 8 Collier, Bankruptcy ¶ 5.49[3]. The argument is that where a debtor's petition is filed under § 322 (or presumably when such a petition is filed under § 321 and no prior adjudication has occurred), there is no adjudication, no "first meeting of creditors after the adjudication" and no bankruptcy administration in the ordinary sense. Moreover, §§ 338 and 378(2) of Chapter XI provide for the creditors' "nomination" of a trustee who shall be appointed by the court only in the event that an order is entered directing a bankruptcy proceeding to administer the debtor's estate; where no such proceeding is pending or contemplated, any appointment of a trustee by creditors under § 44(a) is said to be inconsistent with these provisions.

We have no quarrel with this analysis in general; we agree that Chapter XI contemplates that in proceedings under § 322 the debtor's possession shall remain undisturbed. But the argument fails to take account of the special situation where such an estate is reopened, not for any reconsideration of the arrangement or management of the debtor's business, which has been completely liquidated, but for the limited purpose of insuring effective prosecution of creditors' claims. Under these circumstances, a court may properly look to § 44(a) with its authorization of a trustee's appointment at a meeting of creditors "after an estate has been reopened." Where the reopening is for the sole purpose of prosecuting claims, and especially claims against officers or directors of the debtor, which are the debtor's only remaining asset, we see nothing inconsistent with the scheme of Chapter XI in the court's appointing a trustee rather than following the tortuous path of having the creditors require the debtor in possession to sue its own officers or directors—very likely with special counsel appointed to insure independence, cf. In re Martin Custom Made Tires Corp., 108 F.2d 172 (2 Cir. 1939); In re National Pub.Serv. Corp., 68 F.2d 859, 862–863 (2 Cir.), cert. denied Utilities Power & Light Corp. v. Irving Trust Co., 292 U.S. 641, 54 S.Ct. 773, 78 L.Ed. 1492 (1934); Weintraub & Levin, Practical Guide to Bankruptcy and Debtor Relief 201 (1964).

The order dismissing the complaint is reversed.