Armende LESSER, as Trustee of R. B. M.
Cleaners, Inc., and Hy-Mac Cleaners,
Inc., Bankrupts, Plaintiffs,

v.

Morris MENDELSON et al., Defendants.

No. 70 Civ. 2246.

United States District Court,
S. D. New York.

Nov. 1, 1971.

William L. Richman, New York City, for plaintiff.

Levine, Goldstein & Honig, New York City, for defendants Jewel Factors, Morris Mendelson & Morris Berro.

Louis R. Teig, New York City, for defendants. Leatrice Cleaners, Inc. M. D. Y. Cleaners, Inc., Alvin Cohen & Alex Awerbach.

BRIEANT, District Judge.

The above entitled action having been fully tried before me on October 5 and 6, 1971, I now make the following findings of fact and reach the following conclusions of law with respect thereto:

## FINDINGS OF FACT

1. This plenary action was brought by Armende Lesser, as Trustee of R.B. M. Cleaners, Inc. and Hy-Mac Cleaners, Inc., bankrupts. Plaintiff Lesser is the Trustee in a bankruptcy proceeding pending in the United States District Court for the Southern District of New York. By an Order dated December 8, 1969, the prosecution of this action in a court of plenary jurisdiction was authorized by Hon. Edward J. Ryan, Referee in Bankruptcy.

2. R.B.M. Cleaners, Inc. (hereinafter "RBM") and Hy-Mac Cleaners. Inc. (hereinafter "Hy-Mac"), New York corporations, were adjudicated bankrupts resulting from involuntary petitions filed against them. The filing of the petitions occurred July 30, 1968. The adjudications were effected on August 15, 1968. On September 26, 1968, plaintiff Lesser was duly elected the Trustee of both bankrupts.

3. By Order dated December 7, 1970, Referee Ryan authorized the separate bankruptcy proceedings relating to RBM and Hy-Mac to be consolidated upon his finding that "both corporations had the same officers, directors and stockholders; that the affairs of both were commingled and that the two corporations operated as a unit; that the creditors of each corporation are the same; and that

all receipts and disbursements were handled through a common bank account."

4. Defendants Morris Mendelson and Morris Berro are officers and directors of defendant Jewel Factors Corp., a New York corporation (hereinafter "Jewel"). Defendant Mendelson is its sole shareholder. Leatrice Cleaners, Inc. (hereinafter "Leatrice") and M.D.Y. Cleaners, Inc. (hereinafter "MDY"), defendants, are New York corporations. Defendant Alvin Cohen is a domiciliary of the State of New York and defendant Alex Awerbach is a domiciliary of the State of New Jersey.

5. The Complaint seeks to recover the sum of $75,000.00 in damages, claimed as the value arising out of fraudulent transfers of the bankrupts' property achieved by the defendants at the expense of the bankrupts and general creditors, (11 U.S.C.A. § 110, N.Y. Debtor and Creditor Law §§ 273–276, McKinney's Consol.Laws, c. 12).

6. RBM on July 1, 1968, and for some time prior thereto, owned and operated a retail dry-cleaning store at 1933 Third Avenue in the City of New York, as well as a retail dry-cleaning store at 1838 Third Avenue, New York City.

7. Hy-Mac on July 1, 1968, and for some years prior thereto, owned and operated a dry-cleaning store and plant at 33 First Avenue, New York City.

8. On July 1, 1968, and for some time prior thereto, defendant Alex Awerbach was the owner of one-half of the outstanding stock of each bankrupt corporation and was the President thereof. The balance of the stock of each bankrupt was owned by Alma Awerbach, his wife.

9. On June 30, 1968, and for about one year prior thereto, defendant Alvin Cohen, was an employee of Hy-Mac and managed the store at 33 First Avenue under the direction and control of Alex Awerbach. Cohen is the brother-in-law of Awerbach in that he is the brother of Awerbach's wife.

10. On October 12, 1965, the bankrupts owned certain machinery located

at various addresses, including 1838 Third Avenue, 33 First Avenue, New York City and at 1783 Southern Boulevard in the Bronx, New York, all of which machinery is more particularly listed in defendant Jewel's Exhibit A.

11. On October 12, 1965, RBM, Hy-Mac and Awerbach Cleaners, Inc. were jointly and severally indebted to Jewel in the sum of $25,000.00 and on that date a valid written Security Agreement in the nature of a chattel mortgage was duly executed and delivered by the bankrupts and by Awerbach Cleaners, Inc. The corporations executing the said Security Agreement agreed to pay in weekly installments; with interest at 10% per annum.

12. At some time thereafter, plaintiff Lesser, as attorney for one Jacques Garnier, lent the bankrupts and Awerbach Cleaners, Inc. the approximate sum of $12,000.00.

13. During 1966 and 1967 certain creditors of the bankrupts were not being paid regularly. The payments to Garnier and to Jewel were in arrears and Lesser individually became head of an informal creditors committee for the purpose of overseeing the credit situation of the businesses. Payments were received by Lesser, which he, in turn, allocated and divided among creditors.

14. At all times from about 1967 until adjudication, the bankrupts were insolvent in that they were unable to meet their obligations in due course. They were delinquent in the payment of certain indebtedness, including the obligations to Lesser and to Jewel, and were functioning with the aid of an informal creditors committee, all of which was known to defendants Jewel, Cohen and Awerbach.

15. In June or July, 1968, premises operated by RBM at 1838 Third Avenue, which had previously been condemned by the City of New York, were vacated by RBM and possession thereof assumed by the City. The closing of the store at 1838 Third Avenue diminished the cash flow available for debt service and the operation of the business of the bankrupts.

16. The machinery at 1838 Third Avenue covered by the Security Agreement held by Jewel was then moved and transferred to Hy-Mac's store at 33 First Avenue, with the exception of one or two articles which were left behind or sold by the holder of a prior lien.

17. In March of 1968, the bankrupts were, in fact, insolvent and defendants had actual and constructive knowledge of such insolvency. Defendant Awerbach further knew that the closing of the store at 1838 Third Avenue, which had been taken over by the City of New York, was imminent.

18. Early in March, 1968, Morris Berro, acting as Secretary of Jewel, advised defendant Awerbach that Jewel intended to foreclose upon the Security Agreement covering the machinery owned by the bankrupts, because of the delinquency of the bankrupts in making payment to Jewel. On March 25, 1968, defendant Awerbach introduced his brother-in-law, defendant Cohen, to Berro.

19. On, or prior to March 25, 1968, Awerbach directed one Raab, a New York attorney, to form the corporation Leatrice Cleaners, Inc. and Alex Awerbach paid for the legal services of Raab in connection with its formation. The Certificate of Incorporation of Leatrice was dated March 25, 1968 and was signed by defendant Alvin Cohen and by Rena Awerbach, also known as Gould. Rena Awerbach is the daughter of defendant Alex Awerbach. One-half of the stock of Leatrice was owned by defendant Cohen and one-half by Rena Awerbach (Gould).

20. Attorney Raab prepared a Shareholders Agreement for Leatrice, Plaintiff's Exhibit 14, which provided, in substance, that Leatrice, among other things, would insure the life of defendant Alex Awerbach in the amount of $25,000.00 with the corporation as beneficiary and further that the corporation should "pay the proceeds of the said pol-

icies over to the widow of the respective decedents as full purchase by the surviving insured of the interest of Alvin Cohen on the death of Alvin Cohen or of Rena Gould on the death of Alex Awerbach." The legal services rendered by Raab in the preparation of Exhibit 14 were paid for by Alex Awerbach and the document was prepared at his instance and request, but I do not find any evidence that the Shareholders Agreement (Exhibit 14) was ever actually executed.

21. On April 6, 1968, attorney Raab wrote defendant Awerbach a letter (Exhibit 12) informing Awerbach, in substance, that Leatrice had been incorporated and requesting an appointment for the principals to set up the corporate books. By such letter attorney Raab reminded Alex Awerbach that he, Awerbach, had requested preparation of a Shareholders Agreement and also asked Awerbach for reimbursement of his expenses in organizing Leatrice Cleaners, Inc. The legal disbursements were, in fact, reimbursed to attorney Raab by defendant Alex Awerbach.

22. On or about July 1, 1968, a bank account was opened in the name of Leatrice and the receipts of the stores conducted by the bankrupts on and after that date were deposited in the name of Leatrice instead of in the names or in the accounts of the bankrupts. The resolution signed by defendant Cohen to open the bank account for Leatrice (Exhibit 6) lists Alvin Cohen as the "President" of Leatrice but provides that Alex Awerbach must sign all checks.

23. Leatrice was at all times the creature of Alex Awerbach and was organized by him for the purpose of impeding the rights of creditors and of the Trustee in bankruptcy at a time when he knew that the bankrupts were insolvent and likely to be adjudicated bankrupt, and with the intention of transferring assets of the bankrupts to the new corporation Leatrice in fraud of the rights of creditors, in contravention of §§ 273–276 of the Debtor and Creditor Law of the State of New York.

24. A lease of the equipment covered by the chattel mortgage (Jewel Exhibit A) was prepared about two weeks prior to July 1, 1968. The lease was studied and reviewed by Awerbach and thereafter signed by Leatrice on or about July 1, 1968.

25. At the time of signing the lease, there was attached thereto a schedule repeating all of the items listed in the Jewel Security Agreement (Exhibit A), without any warranty of title or statement as to location. Of such items at least one substantial piece of machinery had been left behind in the store at 1838 Third Avenue, closed by reason of the City condemnation, and was not then in the possession of the bankrupts or Jewel, and several of the items had been disposed of by trade-in on other equipment upon which unrelated third parties had purchase money liens superior to the lien of Jewel.

26. On and after July 1, 1968, and until after the adjudication of bankruptcy, no visible or physical change took place at any of the premises occupied by the bankrupts. Specifically, the store at 1933 Third Avenue continued to operate under the trade-name of "Jet One-Hour Cleaners" and the sign on the store at 33 First Avenue, which read "owned and operated by Hy-Mac Cleaners, Inc." remained visible to the public. The witness Lesser testified that such notice on the door of the Hy-Mac premises continued to exist as late as September, 1968.

27. On July 1, 1968, the date of the purported lease of the equipment by Jewel to Leatrice, no steps had been taken to divest the bankrupts of their title to those items of equipment secured by the agreement which were in existence, and to the extent that such items remained on the bankrupts' premises, they were the property of the bankrupts, and this was known to all parties to this litigation.

28. No effective peaceful foreclosure as contemplated by Section 9–503 of the Uniform Commercial Code, as then in

effect in the State of New York, took place during 1968. At some point in time, attorney Honig, representing Jewel, attended at the Hy-Mac premises and affixed labels reading "Property of Jewel Factors Corp." to the machinery. The date of such labeling is in dispute but I find that the affixing of labels by Honig took place at some point after July 24, 1968, the date on which the labels were purchased (Exhibit 25). The witness Lesser testified that there were no labels on the machinery in September when he visited the premises of the bankrupt after the adjudication, and the witness Awerbach estimates the date of the affixing of labels as August 1, 1968. Although Awerbach was the President of the bankrupts, he physically assisted attorney Honig in affixing the labels. Attorney Honig was not called as a witness. Awerbach had previously introduced Honig to Berro and recommended him as an attorney.

29. At the time of the affixing of the labels the dry-cleaning machinery was not rendered unusable in any manner, as contemplated by § 9–503 of the U.C.C., in fact, the use of the machinery continued as before on the bankrupts' premises and the vapors from the cleaning chemicals and steam caused most of the labels to drop off. I find that under the circumstances of this case, no effective foreclosure or peaceful enforcement of the security interest took place at any time until about December, 1969, at which time Jewel effected a public sale of the equipment by an auctioneer for the sum of $900.00. Under all of the circumstances of this case, the lease of July 1, 1968 to Leatrice did not operate as a taking of possession after default.

30. Leatrice paid no valuable consideration whatever to the bankrupt corporations or to the Trustee in bankruptcy at any time and acquired without cost or consideration the tenancies of the bankrupts in the stores at 33 First Avenue and 1933 Third Avenue, the use and possession of the machinery, the cleaning work which was in progress, the customer good-will, signs, chemicals, counters and fixtures and prepaid expenses and took over the same employees and suppliers used by the bankrupt. The assets of the bankrupts with the exception of a claim in condemnation against the City of New York, were all diverted and transferred to Leatrice on or about the first day of July, 1968, at a time when all parties to the transaction knew of the insolvency and imminent bankruptcy.

31. On July 30, 1968, a judgment was entered for money loaned in the amount of $9,202.22 against the bankrupts by *Jurlan Factors Corp.* There was no defense to such action and the bankrupts did not have sufficient funds to discharge the obligation sought to be recovered thereby.

32. On June 5, 1968, Jewel commenced two separate actions against the bankrupts and, on the same day, confessions of judgment (Exhibits 19 and 20) were executed by Awerbach in favor of Jewel for $32,493.77 by Hy-Mac and $32,493.77 by RBM, and filed in the office of the Clerk of the County of New York. No levy or execution ever took place under such judgments and they were subsequently, at the instance of the Trustee in bankruptcy, adjudged void and vacated by reason of a failure to comply with certain statutory requirements unrelated to the merits of any controversy between the parties. At the time that the confessions of judgment were signed, the bankrupts were unable to pay the amount shown due thereon to Jewel and this fact was known to all parties to the transaction and all parties to this litigation.

33. In June of 1968, Lesser, individually and as an assignee of Garnier, commenced an action against the bankrupts in the Supreme Court of New York County for money loaned and legal fees in the total amount of $14,500.00. At that time, the bankrupts had no defense and were unable to make payment thereof and this fact was also known to all parties.

34. In September, 1968, and thereafter, plaintiff Lesser, as Trustee, made demands upon Leatrice and also upon Jewel for the return of what he claimed to be the assets of the bankrupts, wrongfully diverted, and in late 1968 and early 1969 was pursuing a "turnover" proceeding before the Referee in Bankruptcy.

35. On May 8, 1969, MDY was incorporated as a New York corporation by defendant Cohen. In the incorporation of MDY, defendant Cohen was represented by one Eisenberg, an attorney-at-law associated in practice with the same law firm of which attorney Honig (Finding No. 28, *supra*) was a partner.

36. For the purpose of impeding further the efforts of the Trustee to recover assets of the bankrupts claimed by plaintiff to have been diverted wrongfully, Awerbach, on April 17, 1969, borrowed $3,000.00 from Jewel, by check of Jewel drawn to the order of "M.D.L. Cleaners." The parties to such check intended thereby that the check would be payable to defendant MDY, which was intended to be organized but, as of such date, had not been incorporated. The check was deposited in the account of Leatrice and the funds thereafter found their way from Leatrice to defendant MDY where the funds were used to purchase and open an additional dry-cleaning store and a new plant in the name of M.D.Y. Cleaners at 190 Second Avenue, New York City. Defendant Awerbach testified in a New Jersey bankruptcy proceeding that he had borrowed the sum of $3,000.00 from Jewel for Leatrice and that "actually M.D.Y. Cleaners and Leatrice Cleaners are one and the same."

37. To secure or effect the repayment of the $3,000.00 loan made by Jewel to Leatrice and transferred from Leatrice to MDY, defendant Awerbach wrote a series of personal checks to the order of Morris Berro individually, but intended by Awerbach and Berro to be to the order of and for the benefit of Jewel. Although Awerbach testified that the $3,000.00 loan was made to Co-hen, Cohen never signed any evidence of indebtedness nor did M.D.Y. Cleaners, Inc.

38. MDY in or about May of 1969, acquired the business and locations of Leatrice, formerly of the bankrupts, at the addresses 33 First Avenue and 1933 Third Avenue, New York City, without paying any consideration to Leatrice. This transfer was also effected at the procurement and with the knowledge of all defendants for the intended purpose of impeding the efforts of the Trustee in bankruptcy, and in actual fraud of the rights of the creditors of the bankrupts and Leatrice. MDY is a transferee without consideration of substantially all of the assets which the bankrupts transferred to Leatrice without consideration, and defendant MDY received such assets with notice.

39. On the first day of July, 1968, the reasonable value of the equipment which remained in the Hy-Mac store upon which Jewel had a security interest was $1,000.00. No facts have appeared in the record which would indicate that Jewel would not have been permitted to sell the equipment on or prior to December 3, 1969 under its Security Agreement, if application for such relief had been made in the bankruptcy proceeding.

40. On July 1, 1968, the bankrupts were indebted to Jewel in the amount of $31,025.33 after having made a payment of $150.00 on that day. Although the bankrupts were not current in their payments to Jewel under the written Security Agreement, there is evidence that Jewel had acquiesced in a stretched out and irregular method of payment and that by virtue of such acquiescence the bankrupts were in good standing with Jewel on July 1, 1968.

41. On July 1, 1968, the bankrupts had no lease of the store at 33 First Avenue. Hy-Mac was occupying the store as a month-to-month tenant and there were rental arrears. There was a vacant store across the street or in the immediate vicinity of the Hy-Mac store and

the landlord had not taken any action to evict Hy-Mac as of July 1, 1968 when possession of the Hy-Mac store was taken over by Leatrice.

42. The landlord of the Hy-Mac store was willing to continue for an indefinite period the occupancy of the bankrupt or any successor in interest of the bankrupt at a month-to-month tenancy, and did so with respect to Leatrice and MDY. About May, 1969, defendant Cohen approached the landlord and requested and obtained permission for MDY to assume the month-to-month tenancy, providing MDY would make an effort to liquidate then existing rental arrears.

43. Under the circumstances of the existing case, a month-to-month tenancy is a valuable right of the bankrupt, since a month-to-month tenant has every reason to believe that if he continues to pay his rent and if there is no great market demand for the space by others, his month-to-month occupancy will continue without interruption for a substantial or indefinite period (as evidenced in this case by the actual conduct of the landlord subsequent to July 1, 1968). I find that the month-to-month tenancy at 33 First Avenue, New York City was a valuable property right of the bankrupt Hy-Mac on July 1, 1968.

44. I find that the reasonable value of the Hy-Mac store at 33 First Avenue on July, 1, 1968, including the going concern value and the business and customer relations, employee relations and the relationship with the landlord, as well as the work in progress and all like items enumerated in Finding No. 30, *supra*, amounts to the sum of $27,500.00, of which $1,000.00 is represented by equipment covered by the lien of the Jewel Security Agreement (Exhibit A).

45. There is no evidence in the record sufficient to support any finding of the value of the store operated by RBM at 1933 Third Avenue, except that the tenancy was in the name of Awer-

bach Cleaners, Inc., a corporation also controlled by defendant Awerbach, which was not adjudicated bankrupt, and when the store was closed at the landlord's instance an action was brought for wrongful dispossess in which $10,000.00 damages were claimed. The defendants were able to keep that store operating for less than 11 months following July 1, 1968, and I do not find that the issuance by an attorney of a summons with notice, not verified by any individual party, claiming $10,000.00 damages by reason of termination of the lease, is persuasive evidence of the value of the business of the bankrupts at 1933 Third Avenue fraudulently transferred by the defendants. Although there was a fraudulent transfer and diversion of the assets of the bankrupts consisting of the store and business at 1933 Third Avenue, no damages can be perceived or determined as flowing therefrom and, accordingly, the plaintiff may not recover with respect thereto.

46. I find that the actions of defendants Mendelson and Berro were taken in their capacity as officers and directors of the corporate defendant Jewel and only Jewel received any financial advantage therefrom.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties, and has jurisdiction of the subject matter pursuant to Sections 23(b), 67 and 70 of the Bankruptcy Act, 11 U. S.C. §§ 46, 107 and 110. (Bartle v. Markson, 357 F.2d 517, 522 (2d Cir. 1966)).

2. Plaintiff Armende Lesser as Trustee of R.B.M. Cleaners, Inc. and Hy-Mac Cleaners, Inc., bankrupts, is entitled to recover from defendant Jewel Factors Corp., the sum of $12,600.00, together with interest from July 1, 1968, representing the value of all funds received with knowledge from Leatrice Cleaners, Inc. by reason of the fraudulent transfer to Leatrice of the bank-

rupts' store and going concern and business and other items of value listed in Finding of Fact No. 30.

3. The Referee in Bankruptcy upon the final judicial settlement of the accounts of the Trustee, or otherwise, may make and allow such set off or other equitable disposition, if any, as may be necessary to give proper effect to that portion of indebtedness of the bankrupts to Jewel which was not satisfied or extinguished by the foreclosure of the Security Agreement in December, 1969 against machinery of the bankrupts and public sale thereof for the sum of $900.-00. The judgment to be entered shall be without prejudice to such disposition with respect thereto as may be deemed just and proper by the Referee or Judge having jurisdiction of the bankruptcy proceedings.

4. Plaintiff Armende Lesser, as Trustee of R.B.M. Cleaners, Inc. and Hy-Mac Cleaners, Inc., bankrupts, is entitled to recover from defendants Leatrice Cleaners, Inc., M.D.Y. Cleaners, Inc., Alvin Cohen and Alex Awerbach, jointly and severally, the sum of $13,900.00 with interest from July 1, 1968, computed by allowing the amount of $27,500.00 as the value of the store and business at 33 First Avenue, New York City, fraudulently transferred to Leatrice, less the sum of $1,000.00, representing the value of the machinery on July 1, 1968 and less the further sum of $12,600.00, representing payments made by Leatrice to Jewel, for which Jewel has theretofore been adjudged liable to account to the Trustee.

5. Defendants diverted and obtained as a result of a fraudulent transfer the value of the store and business at 1933 Third Avenue, New York City, but since it had no value, or the value thereof is not proven, no recovery can be had therefor.

6. The Complaint should be dismissed as to the defendants Morris Mendelson, individually and Morris Berro, individually, without costs.

7. The parties shall settle a single judgment on notice embodying all the provisions hereinabove set forth.

So Ordered.