L. E. CREEL, III, Trustee in Bankruptcy
of H. Roger Lawler

and

L. E. Creel, III, Trustee in Bankruptcy
of Lawler Corporation

v.

William R. LAWLER, Jr., Trustee of the Lawler Family Trusts, and George Nicoladze, Individually and as Former Trustee of the Lawler Family Trusts

v.

FIRST NATIONAL BANK OF NEVADA.

Civ. A. No. CA–3–77–0443–G.

United States District Court,
N. D. of Texas,
Dallas Division.

Nov. 14, 1978.

C. Thomas Wesner, Jr., Wesner & Wylie, Dallas, Tex., for Nicoladze, Lawler, and Creel.

Richard W. Horton, of Stewart & Horton, Reno, Nev., and Vernon O. Teofan, of Ungerman, Hill & Ungerman, Dallas, Tex., for First Nat. Bank of Nevada.

PATRICK E. HIGGINBOTHAM, District Judge.

## MEMORANDUM ORDER

At this juncture in the long and tortuous history of this case, the question of jurisdiction remains unresolved. In its present posture, the case is a plenary action by L. E. Creel, III, the trustee in bankruptcy of H. Roger Lawler, the Lawler Corporation, and the Lawler Management Company (in his capacity as trustee for the latter two entities, Creel entered the suit by intervention) against the present and former trustees of the Lawler Family Trusts. (Also involved in this case is a claim by defendant Lawler Family Trusts against the First National

Bank of Nevada that is not pertinent to this order.) The trustee in bankruptcy seeks control of essentially all of the assets of the Lawler Family Trusts for the benefit of creditors of the bankrupt estates. The trustee advances two arguments in support of his claim to these assets.

First, the trustee asserts his right to void certain transfers made by the bankrupts to the Lawler Family Trusts under sections 60, 67, and 70 of the Bankruptcy Act, 11 U.S.C. §§ 96, 107, 110 (1976). Those sections, respectively, provide that the trustee in bankruptcy may void a transfer made by the bankrupt to a creditor within four months prior to the filing of a petition in bankruptcy, where the transfer operates as a preference (as defined in section 60), if the transferee had reasonable cause to believe that the debtor was insolvent; that the trustee in bankruptcy may avoid a transfer by the bankrupt within one year prior to the filing of a petition in bankruptcy where that transfer is a fraudulent conveyance as defined in section 67; and, finally, that the trustee may avoid any transfer of property that is fraudulent or voidable "under any Federal or State law applicable thereto." The transfers specified by the trustee in bankruptcy as voidable under these provisions are two complex series of transactions, resulting in the first instance in the cancellation of an annuity contract upon which the Lawler Family Trust was the obligor, and in the second instance in the transfer to the Lawler Corporation of certain properties, including the Soldier Meadows Ranch, in consideration for the cancellation of an allegedly false debt. The properties involved in this second series of transactions apparently ended up in the hands of the Lawler Family Trusts, although that is not made clear by the pleadings. It is alleged that the cancellation of the annuity contract occurred on April 11, 1975, and that the transfer of property was made on or about April 15, 1975, and "consummated" by recordation of deeds on September 10 and 11, 1975. Finally, the trustee in bankruptcy alleges that on or about April 15, 1975, substantially all of the nonexempt assets of H. Roger Lawler and of the Law-

ler Management Company were fraudulently transferred to the Lawler Corporation and, subsequently, to the Lawler Family Trusts.

The second argument advanced by the trustee in support of his claim to the assets of the Lawler Family Trusts is that the Lawler Family Trusts, the Lawler Corporation, and the Lawler Management Company are not valid separate entities but rather the alter egos of H. Roger Lawler, so that the assets of each are really the assets of H. Roger Lawler. The importance and possible effect of this second cause of action cannot be appreciated without a brief chronology of the events leading up to and following the filing of this suit.

An involuntary petition in bankruptcy was filed against H. Roger Lawler on January 9, 1976, and he was adjudged bankrupt on January 16, 1978. The events specified as voidable in the first part of the complaint occurred on or about April 15, 1975, and, arguably as to the property transfers, on September 10 and 11, 1975, both within one year prior to the filing of the petition in bankruptcy (the time limitation of portions of section 67 of the Bankruptcy Act), and the property transfers within four months prior to the filing of the petition (the time limitation of section 60).

The Lawler Corporation filed a voluntary petition in bankruptcy on January 20, 1978, and the Lawler Management Company followed suit on May 15, 1978. Obviously, the transfers alleged as fraudulent in part one of the complaint would not be voidable by the trustee in bankruptcy under sections 60 or 67 of the Bankruptcy Act if those transfers had been made by the Lawler Corporation or the Lawler Management Company, due to the time limitations imposed by those sections. The only possible attack on such transfers under the Bankruptcy Act would be under section 70, and it is possible that the statute of limitations as to some of the claims would have run before the filing of petitions in bankruptcy of these two entities. [The Texas law of fraudulent transfers is codified at Tex.Bus. & Com. Code Ann. § 24.01, et seq. (Vernon 1968),

and the Texas cases hold that the statute of limitations governing actions to set aside fraudulent conveyances is Tex.Stat.Ann. art. 5529 (Vernon 1958), which prescribes a four-year limitation period. The limitation period begins to run when the fraud should have been discovered. The Fifth Circuit, in *Bonhiver v. Affiliated Companies of America*, 447 F.2d 108 (5th Cir. 1971), has held that the two-year limitation period of Tex. Stat.Ann. art. 5526 (Vernon 1958) applies to actions to recover personal property fraudulently conveyed. At any rate, it is unnecessary for the court to decide the limitations questions at this time.]

It appears from the pleadings that some of the assets alleged to have been fraudulently conveyed in part one of the complaint were in fact transferred to the Lawler Family Trusts not from H. Roger Lawler, but from the Lawler Corporation, and hence are immune from section 60 or section 67 attack due to the time limitations of those sections.

A finding by the court that these three entities were mere alter egos of H. Roger Lawler would, arguably, eliminate any limitations problems, because it would mean, in effect, that all of the assets of the Lawler Family Trusts are really assets of H. Roger Lawler, and hence subject to the summary jurisdiction of the bankruptcy court and available for distribution to the creditors of H. Roger Lawler.

The question now before this court is whether it may entertain the claim that the various entities were the alter egos of H. Roger Lawler. Before grappling with that question, it might be instructive to point out some of the anomalies that are part of the alter ego claim. If it is decided that the Lawler Family Trusts were indeed the alter ego of H. Roger Lawler, then any transfer by Lawler to the trusts was really no transfer at all, and hence sections 60, 67, and 70 of the Bankruptcy Act would not come into play. If that were the case, there would in theory be no jurisdiction of this case. In effect, then, the plaintiff is urging this court to take jurisdiction of a claim that, if found in his favor, travels against the basis for the original exercise of the court's jurisdiction of the case altogether.

The question of jurisdiction in this case is a difficult one, and it is best to begin with what is most definite and then move into those areas where the footing is less sure.

■ There is no doubt that the court has jurisdiction over those claims which seek to avoid allegedly fraudulent transfers and preferences, or both, under sections 60, 67, and 70e of the Bankruptcy Act. While the general rule of section 23 of the Act, 11 U.S.C. § 46 (1976), limits jurisdiction in plenary suits to courts which would have had jurisdiction had the bankrupt himself sued or to courts to whose jurisdiction the defendant consents, that section explicitly excepts from the rule suits under sections 60, 67, and 70. Those sections provide, in 60(b), 67(e), and 70(e), that suits by trustees to avoid transfers under the provisions of those sections are cognizable by federal district courts regardless of whether the general requisites for jurisdiction exist. In the present case, even if the complaint is read with a minimum of generosity, it states a claim under sections 67 and 70 of the Act.

The more difficult question is whether the court may exercise jurisdiction over the claim that the three Lawler entities were the alter egos of H. Roger Lawler. As to this question, at least two highly regarded authorities are in conflict, as will be noted below.

The trustee in bankruptcy urges two grounds for the assertion of jurisdiction over this claim. The first is that there is jurisdiction under the concept of pendent jurisdiction, in that the fraudulent conveyance claim and the alter ego claim are so intertwined as to meet the "common nucleus of operative fact" test of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In the alternative, Creel argues that the alter ego claim should be considered as a mere ground for finding that the conveyances in question were fraudulent, and not as an independent cause of action. In regard to this latter contention, the plaintiff apparently hopes to show that the transfer of assets to an entity

that is really the alter ego of the transferor in order to conceal those assets from creditors is a violation of Texas law of fraudulent transfers, and hence may be attacked under section 70e of the Bankruptcy Act. Under this theory the trustee would probably be unable to overcome the obstacle of limitations and thereby reach back and claim assets transferred to the trust in its early years. Moreover, there remains the requirement of section 70e that transfers challenged must have been fraudulent against or voidable by one who was a creditor of the transferor at the time of the filing of the petition in bankruptcy. At any rate, this is certainly a permissible approach under section 70e of the Act.

The consequences of allowing the alter ego claim as a distinct claim reach further, for successful assertion of that claim might, under Texas law, bring all of the assets of the Lawler Family Trusts, regardless of when or how received, into the hands of the trustee in bankruptcy.

On its face, the argument for pendent jurisdiction seems plausible and routine. The claims are certainly closely connected, and considerations of judicial economy would seem to demand that both be tried in the same proceeding. But the grant of jurisdiction to the federal courts to hear suits under sections 60, 67, and 70 is a narrow exception to a general denial of jurisdiction, and the grant has traditionally been construed narrowly. It is well to remember, too, that Congress could have granted to the federal courts jurisdiction over all plenary suits by trustees in bankruptcy, but has not done so. That fact argues for a strict construction of the jurisdictional grant.

As noted, the courts have traditionally given a narrow scope to the jurisdictional grant of sections 60, 67, and 70. In the early case of *Kaigler v. Gibson*, 264 F. 240 (N.D.Ga.1920), in dismissing that part of a complaint that did not come within the exception to section 23, the court wrote:

> It is true ordinarily that, when a federal court appears on the face of a petition to have jurisdiction because a substantial federal question is involved, it has the right and duty to decide all questions . . . . But the principle *cannot control* here. Section 23 of the Bankruptcy Act establishes a rule of denial of jurisdiction, with exceptions stated therein. *Id.* at 243.

The same reasoning was applied by the Second Circuit to dismiss for lack of jurisdiction that part of a complaint that sought to enforce the contract of the bankrupt's wife to reconvey property to the bankrupt in *Lowenstein v. Reikes*, 60 F.2d 933 (2nd Cir. 1932), *cert. denied*, 287 U.S. 669, 53 S.Ct. 315, 77 L.Ed. 577 (1932). In that case, however, the claims were not so closely related that pendent jurisdiction would necessarily have been appropriate even if the federal claim had arisen under the general federal question jurisdiction.

In a somewhat puzzling decision, the Supreme Court in *State Trust & Savings Bank v. Dunn*, 278 U.S. 582, 49 S.Ct. 184, 73 L.Ed. 518 (1928) reversed per curiam for lack of federal jurisdiction the decision of the Fifth Circuit concerning a claim under section 67 of the Bankruptcy Act and a state claim that the defendant, the pledgee of assets of the bankrupt, had wrongfully sold those assets.

On the basis of these and similar cases, Collier, in his treatise on bankruptcy, concludes that:

> If a complaint alleges several causes of action, some of which are based upon the exceptions to § 23b and others not, those that are not will be dismissed in the absence of independent jurisdictional grounds to support them. 2 W. Collier, Collier on Bankruptcy § 23.15 (14th ed. 1943 & Supp.1976).

Significantly, however, none of the cases cited in support of this conclusion are less than 40 years old; all were decided before the Supreme Court embraced a more expansive view of pendent jurisdiction in *Hurn v. Oursler*, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933) and, more recently, in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Nonetheless, the fact that jurisdiction of the federal

claim in this case is founded on a narrow grant of jurisdiction argues against hearing the pendent state claim.

■ It is true, moreover, that in one recent case pendent jurisdiction over a state claim was held proper where the federal claim was based on the exception to section 23 of the Bankruptcy Act. In *Bartle v. Markson,* 357 F.2d 517 (2nd Cir. 1966), Judge Friendly held that the federal court had jurisdiction over a state law claim that the defendant caused the bankrupt to make a fraudulent transfer that was joined to a federal claim seeking to set aside the transfer under section 70 of the Bankruptcy Act. The court reasoned that the state claim should be heard where the claims are closely related and where considerations of judicial economy and fairness to litigants make it appropriate to litigate both claims in the same proceeding. Given the persuasive reasoning of that opinion, and the fact that it is far more recent than any relied upon by Collier, it seems sensible to conclude that pendent jurisdiction may properly be exercised in a case of this nature where, in the court's judgment, it seems proper.

Certainly in this case the test of *Gibbs* is met. The federal claim of fraudulent transfers to the Lawler Family Trusts involves questions as to the validity of those trusts, which are closely tied to the state claim that the trusts were the alter ego of the bankrupts. Much of the proof relevant to the federal claim will be pertinent to the state claim.

Even though the *Gibbs* test is met, however, the inquiry is not at an end, for the federal court may, in its discretion, dismiss the state claim. The cases hold that the proper considerations to guide that discretion are fairness to litigants, judicial economy, the predominance, if any, of state issues over federal issues, and the possible confusion of the jury that would result from trying the claims together.

The proper resolution of these considerations in this case is far from clear. Considerations of judicial economy and fairness to litigants militate strongly in favor of accepting jurisdiction over the state claim.

The case has been pending since April, 1977, with extensive pretrial proceedings taking place during that time; however, the trustee did not inject these state claims until June 19, 1978. Nonetheless, dismissal of the state law claim and institution of a new lawsuit by plaintiff and intervenors in state court might result in some duplication of effort.

■ Other considerations, however, argue with even more force against hearing the state claims in this proceeding. To begin with, there is a substantial possibility of jury confusion that would arise from hearing both claims, particularly in light of the fact that the law concerning the avoidance of fraudulent and preferential transfers is complex. To sever out the claims for trial purposes undercuts the original justification for allowing their joinder at the outset.

That the alter ego claim predominates over the federal claim is important, at least in the sense that the relief sought under the state claim is far broader than under the claims of preferential and fraudulent transfers. The state claim in effect subsumes the federal claim, and success as to it would make any consideration of the federal claim unnecessary. In that regard, this case is distinguishable from *Bartle v. Markson, supra,* where the state and federal claims were in more even balance. This court's experience in resolving the many pretrial disputes is that this is a "tail-wagging-the-dog" situation.

In view of that fact, it would be improper to hear the alter ego claim in this proceeding. Congress has carefully delineated the circumstances under which a trustee may avoid preferential or fraudulent transfers made by a bankrupt before the filing of a petition in bankruptcy, and has further granted to the federal courts a limited independent jurisdiction to hear such claims. It would violate the spirit of those provisions to permit a far-reaching state law claim to ride into federal court on the coattails of a carefully tailored federal cause of action which, itself, came into court by virtue of a

narrowly-drawn jurisdictional grant. Nor is it clear that dismissal of the state law claim will unduly harm the plaintiff and intervenors in this action. There is still available to them the weapon of section 70e of the Bankruptcy Act, under which they may attack as fraudulent those transfers that are voidable under state or federal law, limited by the requirement of finding a creditor who could have voided the transfer on the date of bankruptcy. The plaintiff and intervenors would, of course, be allowed to advance the alter ego theory as an element of such a claim.

It is therefore, ORDERED that the state law claim of alter ego, insofar as it constitutes an independent claim, is DISMISSED for want of jurisdiction; and the case shall proceed as a plenary suit in bankruptcy under the carefully wrought provisions of the Bankruptcy Act.