LIVELY, Chief Judge.
In this action the trustee in bankruptcy of the bankrupt Terminal Equipment, Inc. (Terminal) sought to recover from the defendant Lake County National Bank (the Bank) for a fraudulent transfer of assets of the bankrupt and for tortious interference with business relationships of the bankrupt. After a jury trial the plaintiff was awarded a judgment of $30,000 on the fraudulent transfer claim and $475,000 on the claim of tortious interference. We reverse.
I.
Terminal manufactured large specialized machines known as “steel slitters” costing several hundred thousand dollars each. In 1975 it was experiencing financial problems and sought loan commitments from the Small Business Administration (SBA). In February 1976 Terminal obtained from the Bank a $125,000 loan which was ninety percent guaranteed by the SBA and secured by a lien on Terminal’s machinery, equipment and fixtures. In order to obtain the SBA guarantee the two principal owners of Terminal, Simpson and Jackson, gave the SBA second mortgages on their residences. In addition Terminal delivered to the SBA “standby” agreements whereby existing creditors of Terminal subordinated their claims to those of the SBA. Later in 1976 Terminal obtained further financing through the SBA in the form of a $200,000 guaranteed line of credit from the Bank. This loan was secured by security interests on Terminal’s accounts receivable and inventory, and on a slitter which was being manufactured for the Laffrey Steel Company. The purpose of the loan was to finance the building of the Laffrey slitter. By December 1976 both SBA guaranteed loans to the Bank were in default. On August 9, 1977, Terminal was adjudged a bankrupt.
In January 1977 Central States Stamping Company (Central States) ordered a slitter from Terminal and made a $30,000 down payment. The president of Central States had talked with a vice-president of the Bank about Terminal’s financial condition and the reliability of its principal officers prior to making the contract. The Bank knew that Central States was concerned about Terminal’s ability to fulfill the contract. When Terminal received the $30,000 payment, it did not use the money to finance the Central States machine. Instead, Terminal deposited it and the Bank applied the money to Terminal’s pre-existing indebtedness. This was the basis of the trustee’s fraudulent transfer claim. For recovery the trustee relied on section 67d(2)(d) of the Bankruptcy Act,[1] 11 U.S.C. § 107(d)(2)(d) (repealed 1978), which provided in pertinent part:
(2) Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent
5k sk * * sk sk
(d) as to then existing and future creditors, if made or incurred with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors.
II.
The jury found that there was a fraudulent transfer and awarded the trustee $30,000. On appeal the Bank contends that the evidence was insufficient to sup *1402 port the finding of fraudulent transfer. It argues that the trustee failed to establish two essential attributes of fraudulent transfer — a diminution of the debtor’s assets available to creditors, and fraudulent intent on the part of the transferor. The Bank reasons that since it held a valid security interest on accounts receivable, the $30,000 down payment would not have been available to general creditors, and its appropriation to the Bank’s secured claim worked no depletion of Terminal’s assets. In support of its position the Bank relies on a respected text, 1 Glenn, Fraudulent Conveyances and Preferences, § 195 (rev’d ed. 1940). (“The test, we repeat, is whether, as a result of the debtor’s operations on the title to its property, the creditor loses by reason of finding less to seize and apply to his claim.”)[2] The district court acknowledged this requirement by instructing the jury: “[A]ny money received by the bank from Terminal which constituted proceeds from an account receivable, may not be considered by you as a fraudulent transfer, even though such action by the bank resulted in Terminal’s inability to pay other creditors.” Nevertheless the district court also instructed the jury that it could find a fraudulent transfer if it concluded that the Bank intentionally misled Central States into contracting with Terminal and paying money to Terminal under these contracts, knowing that Terminal could not completely perform its contractual obligations. This instruction appears to treat the payment by Central States to Terminal as fraudulent within the Act; however, section 107(d)(2)(d) refers only to transfers by the debtor, that is by Terminal. This instruction was erroneous and misleading.
The only transfer by the debtor in issue here was the $30,000 transfer to the Bank. Central States has sued the Bank for recovery of the $30,000 based on a claim of fraudulent misrepresentation, and we have affirmed a judgment for that recovery. See Central States Stamping Company v. Terminal Equipment, Inc., 727 F.2d 1405 (6th Cir.), decided this date. As has been noted, because of the Bank’s valid security interest in accounts receivable, that transfer did not diminish the assets of the debtor which were available to its creditors. We agree with the Bank that under the circumstances of this ease the $30,000 transfer had no effect on the creditors of Terminal. It did not hinder, delay or defraud them. A payment which would never have been made to Terminal without the intervention of the Bank and was subject to the Bank’s security interest ended up in the Bank’s hands. The other creditors of Terminal were not harmed by the transfer. This requirement for establishing a fraudulent transfer not having been met, the intent with which the transfer was made is immaterial. The district court erred in submitting the fraudulent transfer claim to the jury. Upon remand this claim will be dismissed.
III.
A.
The Bank also claims that the district court erred in permitting the tortious interference claim to be joined with the claim of fraudulent transfer. The district court found that the state claim for business interference was properly before it under its pendent jurisdiction, since the fraudulent transfer claim presented a claim under the Bankruptcy Act. The doctrine of pendent jurisdiction was delineated by the Supreme Court in United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966):
The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff’s claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then assuming substantiality of the federal issues, there is power in federal courts to hear the whole.
(Footnote omitted) (emphasis in original).
Later cases have further refined the doctrine:
*1403 The Aldinger and Zahn cases thus make clear that a finding that federal and nonfederal claims arise from a “common nucleus of operative fact,” the test of Gibbs, does not end the inquiry into whether a federal court has power to hear the nonfederal claims along with the federal ones. Beyond this constitutional minimum, there must be an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether “Congress in [that statute] has ... expressly or by implication negated” the exercise of jurisdiction over the particular nonfederal claim.
Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978), (quoting Aldinger v. Howard, 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976), and citing Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973)). The Bank argues that a district court has narrower discretion in considering pendent claims in actions under the Bankruptcy Act than in other federal question cases. It relies principally on Creel v. Lawler, 462 F.Supp. 118, 122-23 (N.D.Tex.1978), where the court stated that it would violate the spirit of the narrowly drawn jurisdictional grant to federal courts with respect to a trustee’s claim for fraudulent transfer “to permit a far-reaching state law claim to ride into federal court on the coattails” of such a claim.
It is beyond question that pendent jurisdiction is a doctrine of discretion, not one of right. In the absence of a clear showing that Congress intended to deny the right to join pendent state claims to particular types of federal claims, the policy of the Federal Eules to encourage joinder of claims, parties and remedies is a proper factor for consideration. Federal jurisdiction over suits such as this by a trustee is conferred by section 23 of the Act, 11 U.S.C. § 46. This jurisdiction is limited by subsection (b) of section 23 to proceedings provided for in enumerated sections of the Act, in the absence of consent by the defendant. One of the enumerated sections is section 70. The fraudulent transfer claim was brought in federal court pursuant to section 70e(3) of the Act, 11 U.S.C. § 110(e)(3), as a transfer “suffered” by the debtor. The facts on which the tortious interference claim is based are essentially the same as those required to support a finding that the Bank used its dominance over Terminal to direct its affairs, including causing it to “suffer” a transfer of property, to the detriment of the debtor, and ultimately of its creditors. Though the bankruptcy jurisdiction of federal courts is limited, we cannot conclude that the district court lacked the power to consider the tortious interference claim. Nor under these circumstances do we believe the district court abused its discretion in permitting the state claim to be asserted pursuant to the court’s pendent jurisdiction. Cf. Bartle v. Markson, 357 F.2d 517, 522-23 (2d Cir.1966) (allowing pendent jurisdiction for analogous claims under Gibbs’ restrictive forebear, Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933)).
B.
The Bank makes several arguments concerning the evidence presented by the trustee in support of his tortious interference claim. In the first place, the Bank contends that the evidence of impermissible interference was insufficient and that it was entitled to a directed verdict. The Bank claims it did nothing more than any lienor would do to protect its interest and that its actions were designed to help all creditors of Terminal, that this was a typical “workout” situation. There was evidence that the Bank required the president of Terminal to take a fifty percent reduction in salary, that it had required Terminal to replace its accountant with one chosen by the Bank and that the Bank’s approval was required for all payments by Terminal. The president of Terminal testified that the Bank’s supervision of all payments created “very severe problems in operating the company,” that he was forced to operate without knowing what money was available since the Bank would not tell him, and that *1404 the Bank refused to make payments on a condominium used by customers. In addition a memorandum prepared by the Bank was introduced. Styled the “13-point program,” this memorandum described a course of conduct by the Bank designed to “help salvage whatever is possible” from the Terminal situation. Given the interpretation urged by the trustee, this memorandum could be read as a plan involving impermissible interference. The evidence detailed here is in addition to the undenied fact that the Bank suggested that its landlord change the locks on premises occupied by Terminal. We believe the evidence was sufficient to take this claim to the jury.
A separate evidentiary argument relates to the proof of damages. The Bank contends that the evidence of damages was so general and imprecise that the jury’s verdict represented nothing more than speculation. Such a verdict is not permitted. Agricultural Services Association, Inc. v. Ferry-Morse Seed Co., 551 F.2d 1057 (6th Cir.1977). Since the case may be retried, and the proof may be different at a second trial, we will not analyze the evidence at the first trial in detail. However, this court has recognized that Ohio’s measure of damages for destruction of a business is the difference between the value of the business before and after the injury, and that the proper method of valuing a business to determine injury is the capitalization of the business’ earnings over a reasonable period. Taylor v. B. Heller and Company, 364 F.2d 608, 612-13 (6th Cir.1966).
Even if the proof of damages was sufficient otherwise, the Bank asserts that the district court erred in permitting the jury to consider the claims brought by Terminal’s creditors in setting damages. We agree. The trustee had no standing in this action to sue on behalf of creditors. He sued under section 70a of the Act, 11 U.S.C. § 110(a), which vests the trustee with the title of the bankrupt in the bankrupt’s property, including rights of action. He stands in the shoes of the bankrupt, not of its creditors. Furthermore, the amount of creditors’ claims is totally unrelated to the determinative fact in setting damages — the difference in the value of the business of Terminal before and after the alleged tor-tious conduct of the Bank. The error in admitting evidence of creditors’ claims was compounded by the court’s instructions which listed these claims as an element of damage. Contrary to the trustee’s assertion, the Bank did object to this portion of the court’s charge. Upon retrial, evidence of creditors’ claims will not be admitted to establish damages.
IV.
The Bank pleaded as an affirmative defense the $262,000 unpaid balance due from Terminal on the two notes. The district court dismissed this defense and refused to permit evidence of Terminal’s alleged initial fraudulent inducement of the loan. The Bank strenuously argues that it was entitled to develop its affirmative defense as a set-off to the trustee’s claims. This court has recognized that set-offs are generally favored, but are not automatically permitted. Brunswick Corporation v. Clements, 424 F.2d 673, 675 (6th Cir.1970). The allowance of a set-off is within the discretion of the trial court and its decision on the matter will not be set aside unless found to constitute a clear abuse of discretion. In Re Diplomat Electric, Inc., 499 F.2d 342, 346 (5th Cir.1974). We are not convinced there was a clear abuse in this case.
The judgment of the district court is reversed, and the cause is remanded for determination by the trial court of whether to proceed with a new trial on the issue of tortious interference in view of our dismissal of the fraudulent transfer claim.

. Since the action was commenced before the effective date of the Bankruptcy Code, it is to be decided under the Act. Pub.L. No. 95-598, § 403, 92 Stat. 2683 (1978).

. Glenn was not referring to the Bankruptcy Act. However, § 67d(2)(d) conforms to previous state law, and previous authority interpreting state law is persuasive.